QUEEN VICTORIA. The (PENNSYLVANIA COAL CO. v.). See Case No. 10,952a.

QUERRY (MILLER v.).　See Case No. 9,583.

QUICK v. CLINTON.　See Case No. 11,518.

QUICK (OVERMAN v.).　See Case No. 10,624.

---

## Case No. 11,508.

### QUICKSILVER MIN. CO. v. HICKS.

[4 Sawy. 688.] [1]

Circuit Court. D. California.　Sept. 9, 1868.

EJECTMENT — DEFENDANT'S POSSESSION — USE — BOUNDARY—MEANDERING STREAM.

1. Any subjection of land to the dominion of a party, such as cultivation or other substantial use, is sufficient evidence of possession to enable an adverse claimant to maintain ejectment against him. Actual occupation in person, or by agent or servant, is not essential.

[Cited in Bell v. Foxen, 42 Fed. 756.]

2. Where a party claiming a small strip of land on the bank of a creek, constructed and maintained a bridge over the creek abutting on the premises: It was *held*, that this use of the land was sufficient evidence of possession to maintain ejectment.

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

3. Where land adjoining a creek was described in a patent of the United States as bounded on the side of the creek by a line meandering from a point in its center down the center a certain distance to a station on the bank, and thence a further distance to another station, and so on from station to station on the bank, according to various courses and distances to a point where the line left the creek: It was *held*, that the creek constituted the boundary of the land; and that the courses betwen the stations only indicated the general direction of the stream, being points fixed by the surveyor to enable him to compute the amount lying between the creek and the other boundaries.

[Followed in Hills v. Homton, Case No. 6,-508.]

[Cited in Weiss v. Oregon Iron & Steel Co. (Or.) 11 Pac. 255.]

This was an action for the possession of a parcel of land situated in Santa Clara county, and was tried at the July term, 1868, by the court without the intervention of a jury, upon stipulation of the parties.

S. L. Johnson, for plaintiff.

S. O. Houghton, for defendant.

FIELD, Circuit Justice. The property in controversy in this case is a narrow strip of land, in Santa Clara county, lying on the northerly side of Capitancillos creek, measuring about one-fourth of a mile in length, and between thirty and fifty feet in breadth, and containing a little more than two and one-half acres. The action is brought for the entire tract of land granted by the Mexican government to Justus Larios, and patented by the United States to Charles Fossatt in February, 1865, containing over three thousand acres. The complaint alleges the seizin by the plaintiff, a corporation created under the laws of the state of New York, of that entire tract, and its ouster therefrom by the defendant; but on the trial it was not pretended that the defendant had ever asserted ownership or been in possession of any greater portion than the narrow strip mentioned. The claim to this strip by the respective parties arises from their different construction of the language of the patent to Fossatt describing the boundaries of the tract confirmed to him. The defendant asserts title to the premises under a conveyance from the pueblo of San Jose. The land patented to that corporation by the United States is bounded on one side by the land previously patented to Fossat. The principal question, therefore, and the source of controversy between the parties is one of boundary.

The incorporation of the plaintiff is admitted by the general denial which the defendant has pleaded. The want of legal capacity to sue must be specially set up in the answer by the provisions of the practice act of the state, which by rule governs in common law cases in the circuit court of the United States.

The possession by the defendant of a portion of the land in controversy is sufficiently established by the construction and mainte-nance by him of a bridge over Capitancillos creek, abutting on the premises. This bridge he has, against the protestation and resistance of the plaintiff, rebuilt after it was destroyed, and has persistently maintained and used it. The possession which must be shown in the defendant to enable an adverse claimant to the land to maintain ejectment against him, is not necessarily an actual occupation in person or by agent or servant. Any subjection of the property to the will and dominion of the party is sufficient. Such subjection is shown by its cultivation or by any other substantial use, as well as by residence thereon by himself or his tenant. No more complete subjection to the dominion of the defendant of the land covered by the abutment of the bridge could be shown than by his appropriation of it for that purpose. The appropriation has always been accompanied by a claim of ownership; a claim asserted not merely to the particular parcel on which the bridge rests, but to the entire strip of land in dispute. It is sufficient, however, for the maintenance of the action that the possession by the defendant is shown of any portion of the premises claimed.

The patent to Fossatt, in describing the land confirmed to him, gives the boundary line on one side as running to the center of Capitancillos creek, and thence meandering down the center of the same one chain and ninety links to a station; thence north seventy-four degrees, fifteen minutes west, five chains to another station; and so on from station to station, according to various courses and distances, to a point where the line leaves the creek. The several stations designated are on the bank of the creek, and between the line drawn from one to the other and the creek lies the narrow strip of land in controversy. The defendant contends that the line drawn from station to station constitutes the boundary. The plaintiff, on the other hand, insists that the creek is the boundary, and that the courses between the stations only indicate the general direction of the stream, and that the stations are points fixed by the surveyor to enable him to compute the extent of land lying between the creek and the other boundaries. This latter view is undoubtedly correct. The language stating that the line meanders down the center of the stream settles the point. The stations could not of course be placed in the stream; nor could the estimate of the area in the tract confirmed be made from a tortuous line following the sinuosities of the creek; of necessity, then, the stations had to be fixed on the bank, and they were fixed more or less distant from the creek, according to the condition of the bank at the points selected.

In Luce v. Carley, 24 Wend. 451, one of the courses in the description of the premises in the deed under which one of the parties claimed ran to a hemlock tree, "stand-

ing on the east bank of the river; from thence down the river as it winds and turns twenty-four chains and ninety-four links to a hard maple tree." It was held that the grantee took to the center of the river. ".It is never thought," said the court, "that monuments mentioned in such a deed as occupying the bank of the river are meant by the parties to stand on the precise water line at its high or low mark. They are used rather to fix the termini of the line, which is described as following the sinuosities of the stream, leaving the law to say, as the line happens to be above or below tide-water, whether the one-half of the river shall be included, with the islands which lie on the side of the channel nearest to the line described. Where the grant is so framed as to touch the water of the river, and the parties do not expressly except the river, if it be above tide, one-half of the bed of the stream is included by construction of law. If the parties mean to exclude it, they should do so by express exception. Without adhering rigidly to such construction, water gores would be multiplied by thousands along our inland streams, small and great, the intention of parties would be continually violated, and litigation become interminable."

The concluding observation of the court in this citation would be applicable to innumerable cases in this state were any other construction adopted than the one approved. The surveyors who were produced by the plaintiff had had great experience in the survey for the government of lands confirmed to claimants under Mexican grants, and they stated that the measurement in such cases, where a stream not navigable was the boundary, was always made by lines run from station to station, or monument to monument, selected or fixed on the bank, and that an approximation to the entire quantity embraced by a line running in the center of the stream was thus obtained. Cockrell v. McQuinn, 4 Mon. 61; Bruce v. Taylor, 2 J. J. Marsh. 161; .Cold Spring Iron Works v. Tolland, 9 Cush. 492.

We are clearly of opinion that the Capitancillos creek is the true boundary between the land of the respective parties, each owning to the center of the stream. We therefore find for the plaintiff, and judgment must go in its favor accordingly.